Good afternoon. May it please the Court, Robert Morris for Appellant Great Lakes Insurance SC. The question to be resolved today is the breadth of an insurer's duty to defend a trademark infringement action under a policy which specifically excludes coverage of trademark infringement and trade dress infringement. We recognize while the duty to defend. Can I ask a preliminary question? Surely. Did you move for the 54B judgment? I'm sorry? Did you move for the 54B judgment? No. Who requested it? I'm sorry? Who requested the 54B judgment? I'm not sure. Which side wanted the judgment to be defined? Which side asked the judge to issue a 54B judgment? I don't know what's so hard about the question. I apologize, Your Honor. She's speaking about the district court. In other words, it was only a partial summary judgment and one party moved to enter a final judgment under Rule 54, right? Correct. Well, that's what she's asking about. Who did that? What was so hard about it? I'm sorry. I apologize. I was I was I wasn't sure what what you were referring to specifically. The 54B judgment is what it referred to four times. We requested we requested a judgment, a summary judgment, and based on the duty to defend and the court reserved. I must say that I find it very troublesome that this was issued and if we're going to start seeing in every duty to defend case a 54B judgment and we're going to have all these cases before any duty to indemnity is decided and we're going to see these cases three and four times. I don't understand. I understand the concern. I can only tell you that. And I don't know why you guys would want it. I mean, it's now a year and a half and the case hasn't gone forward. Wouldn't you have been better off simply finishing and coming up with one piece? Perhaps, Your Honor, but that was what the district court No, it's what you asked for, apparently. We we asked. Yes, we asked to be able to appeal the issue of the duty to defend, because if we are successful on the duty to defend, we will not get to the duty to indemnify. Are you prepared to argue about it? Because we're kind of springing this on you because neither party has discussed it. Right. I'm sorry. Are you neither party discussed this question in the briefs? Are you prepared to argue about it? Or if we are interested, should we ask for OK. All right. Go on with your argument. I'm sorry. Then go on with your argument. Again, the question is the breadth of the duty to defend. While the duty to defend is broad, it is not unlimited. The duty to defend cannot be manufactured based on potential facts and unpled allegations. Here we have a policy which provides very limited coverage for trade dress infringement in an advertisement and which infringement is caused by an advertisement. We're talking about trade dress infringement. It's the appearance of the product indicating its source. Advertisement is defined specifically in the policy. It requires widespread public dissemination by broadcast of publication, which is simply absent here. Well, we don't know whether it's absent. That's the whole problem, right? The complaint says advertisement, right? Correct. You're OK. And uses that word. The question is whether that might mean an advertisement in the in the sense that advertisement is defined in the policy and certainly might. Correct. However, there are cases which have which state that use of the word advertisement in and of itself is insufficient to fall within the category of of an advertisement. You need something more than that. And we don't have that here. Let's remember the essential allegation against In-N-Out by Forever 21 is that it's manipulation of labels, blacking out. Well, that was part of it. And then they also said and even when you didn't have the labels there, there was something about the way the straps were on and the kind of clothes they were and so on. But that's not an advertisement because. So so when they when they answered, I mean, maybe you got an argument about the complaint. I'm not sure I agree with that even. But but when you get the answers to the interrogatories, there's an interrogatory that says this is one of several of them. Do you contend that the actions of the defendant alleged in the complaint included the unauthorized use by defendant of plaintiff's trade dress honor in conjunction with the defendants, the advertising or promotional materials? The answer is yes. And that that's language square that squarely within what's included in coverage, right? Interrogatory number eight is the one I read. But that's not any indication of notice to a relatively large or disparate audience. That's what you need here. You need widespread public dissemination. And it's just not simply inferable from those interrogatory responses. Remember in the interrogatory responses, they were objected to and there was no further explanation other than the word yes. That certainly wasn't sufficient. We have a situation here. I'm sorry. When you answer yes, one more explanation is needed. Well, all I all I'm saying, Your Honor, the question is, do you contend this? The answer is yes. Why do I need to explain it? I'm not getting it. You're still not getting it. It's still not enough, because all you're saying is that it's it's it's exactly duplicating what the what the allegation of the complaint is, which is insufficient. It says advertising. So they're saying they're saying advertising. That's what they're saying. But that doesn't create a situation. It's not there's no facts alleged, which are very inferable to to to determine that there's been widespread public dissemination to a large audience. Isn't the whole point of the duty? I mean, the duty to defend, generally speaking, is broader than the duty to indemnify, right? And the reason the reason for that is that, or at least part of the reason for that, is that when you have an insured who's bought this insurance policy and they they get sued by somebody else, that they're not supposed to have to guess and figure out at what they're being sued for. If there's something that's even potentially within the policy, they're allowed to turn it over to the insurer. I understand that, Your Honor. However, in this particular situation, we have we have a situation where the insured had no reasonable expectation of coverage. This complaint was for trademark infringement. There's no reference to trade dress anywhere in the complaint at all. It's specifically trademark infringement. There is no way that the carrier here, Great Lakes, was put on notice that this was a claim that would fall within the definition of trade dress infringement in an advertisement. We have a situation, this is not like a lot of policies where you have coverage for trade dress infringement or trademark infringement. Here, this is this is a very limited amount of coverage. It's trade dress infringement in an advertisement. There is absolutely nothing here, nothing, which establishes that there was an advertisement. It's just hard to swallow when it says advertising. I understand that. Explain to me what you mean by that. I just don't believe that you can have a situation where you automatically invoke a duty to defend just by using that word. Perplus and Microtech say that's not the case. Are those California cases? What's that? Are those California cases? Yes. And so, in other words, the underlying complaint has, I mean, this is sort of like applying Iqbal one step back. I mean, that is that there has to be enough specificity in the underlying complaint that simply using the exact term is not good enough. Right. There has to be some facts reasonably inferable from the allegations of the complaint. Well, ordinarily, one would think that saying there's advertising is a way you can infer from there that there was advertising. But you need to, but trade dress. That they're alleging advertising. Correct. But there's no, there's no allegation of trade dress infringement in an advertisement. That's a different question. My understanding is that your argument is that they didn't allege advertising. No. There's two things that have to be established here. Trade dress infringement in an advertisement. I understand that. And that the infringement was in fact caused by the advertisement. I know. Okay. And that we do not have here. There's no causation either. All right. So now you're backing off from the notion of saying advertising doesn't say that there was advertising. I'm sorry? You're just saying that there was advertising, but it wasn't advertising that included trade dress. No, I am not saying that at all, Your Honor. We have a situation where the only thing we have is manipulation of labels. Manipulation of what? Of the labels on the garments. No, that's not the only, I mean, that clearly is not right. I mean, you're going to do a lot better if you at least acknowledge what's actually in the complaint. Because that clearly is not all that's in the complaint. Well, but there's no trade dress infringement allegations in the complaint either, Your Honor. Labels are not in advertisement. The product itself on display is not in advertisement. The product itself what? The product on display in the store. You walk into an In-N-Out store. You see the product there. And it's not, that doesn't constitute an advertisement even if it appears to be somebody else's product. It's a very limited amount of coverage here. And they just did not meet their burden of proof of establishing that type of coverage in this situation. And the district court in this case, in the 2006 case we cited, Hartford versus Hablinski, in remarkably similar situation, it held that the underlying action and related extrinsic evidence did not give rise to coverage for advertising injury because in that case, the distribution of a flyer at the Pacific Design Center showroom could not have been sufficiently widespread to constitute an advertisement. I hope you're not saying that there's a rule that if you say something at a district judge, you're stuck with it for life. Because if so, I'm in big trouble. I would not, Your Honor. I would not. Mr. Morse, let me ask Judge Berzon's question a little bit differently. What in the complaint, or what did the district judge rule in terms of advertisement and trade dress that was erroneous? Well, first that she ruled that the obfuscating of labels, this was during oral argument, she stated that the obfuscating of the labels itself, when they were displayed, the product displayed at the store was sufficient to constitute an advertisement. Is that the only basis to support her conclusion that there was advertising? Well, I think she was going on the basis that the duty to defend is very broad and she was... I know that, but any other factual allegation or factual matter on advertising besides manipulation of the labels? No. Other than... That's all? You're saying that's all? No, no, no. I'm not saying that. Well, there's allegations from the complaint using the word advertising, which... But Paragraph 26 says the following, and I think the most productive thing would be for me to tell me why this is not enough. Forever 21 is informed and believes that defendants attempt to mask or otherwise disguise their efforts to unlawfully piggyback on Forever 21's goodwill by offering for sale and selling products with partially blacked-outs, cut or otherwise ablated marks. However, this manipulation is done in such a manner that it remains apparent to the average reasonable consumer that the marks so manipulated were once Forever 21 marks. Also, where any reference to Forever 21 marks has been entirely removed from these products, the products are unlawfully and unfairly marketed, advertised, or regularly referred to as Forever 21 goods in an effort to appropriately and unfairly maintain or create an association. All right. Why isn't that enough? The reason it's not enough is because there's... It's still not an advertisement. All we have is... It says... I'm just not sure. It should... It has been entirely removed. So they are unlawfully marketed, advertised, or regularly referred to in an effort to create the association that they are these unauthorized goods. Right. And going back to the cases which talk about manipulation of labels, whether labels themselves can constitute an advertisement, we're talking about an advertisement. It has to be some type of notice that is... But this only applies when the advertisements aren't there. This whole paragraph is about taking out the labels but still trying to palm it off as Forever 21. But it's not... It's not something that's broadcast or published, broadcast or published notice to the general public or a specific market sector. And they had the burden of demonstrating widespread dissemination of its infringing advertisements and there's just nothing there, Your Honor. I'd like to reserve my... Okay. Thank you very much. Thank you. Good afternoon. May it please the Court. My name is Dean Pappas. I represent Appellee in and out fashion. Your Honor, it was the appellant that made the request that this motion be... That the summary judgment motion be a final judgment so that this could go up on appeal. We challenged that. We lost. But I did not cross appeal on that and I'm not prepared to argue that issue. Okay. Okay. But just to be clear, what is left in the district court is an indemnity claim and motions to amend to add damages, a damages claim and something else. I'm not sure what. Right. We made a motion to amend our answer to add a cross action for bad faith and then... And for damages. And for damages. For a breach of contract. For a breach of contract and bad faith. And what? I'm sorry. And bad faith. Right. Right. And then she stayed the action at the time that she granted the motion... All right. I just want to be clear about what's out there. That's what's out there. Yes. So the breach of contract would apply to both the refusal to defend and any indemnification for your settlement, right? Correct. All right. So my client... Listen, just help us out. Go back to the paragraph of the complaint that Judge Berzon was discussing with Mr. Morris, and that's what I think Mr. Morris referred to as, I forgot his exact line, something like the label manipulation claim, right? Paragraph 26? Correct. Now, is there something more than that that you claim is advertising? Something besides that? Or is this the advertising? No, there's a lot more than that. All right. Tell us what else there is. What's your best case on what constitutes advertising in terms of what was this on a motion? Summary judgment? Summary judgment. All right. So what's in the summary judgment record that you depend on that shows advertising? What's your best case of an advertisement? Well, it's a duty to defend case. So it's based upon two things. It's based upon the complaint and the discovery responses. All right. That's what I'm saying. So what's your best case? So what we had about advertisement are multiple allegations in the complaint about advertising. It talks about in paragraph... For instance what? Show me one. I'm telling you. In paragraph 25, it talks about tortious activity, including advertising products, displaying intellectual property, and not limited just to the tags, right? In paragraph 31, it says that the defendants committed these acts for the purpose of deceiving and consuming public and the public at large. In paragraph 32, it says that the acts, including advertising... Well, 25 deals specifically with Marx, though, specifically a trademark claim. Except that Marx is a broad concept here, right? They're trying to seek coverage for actually a broad range of protected intellectual property. It's not just Marx. It also includes text... I know, and 25 doesn't help you very much because it says bearing the forever 21 Marx. But... And that's what that's about. The next one is about without the Marx. What else is there? But, again, we're looking at the complaint as a whole, which we have to because we have to look about anything that's inferable in the complaint. We don't parse it down really section by section. And we look and it talks not just about the Marx, but if you look even in the description of the Marx, for example, those in paragraph 14 and paragraph 15, it talks about, you know, Marx such as or protected property such as forever 21 or F21. It talks about designs being protected, a bird design, a flower design. Where is that? That's in paragraphs 14 and 15. 14 has the long list of protected text. And in 15, it also talks about... I'm sorry, but I don't see any reference to flowers or anything. I think it's in... It's 15. It's in 15. Okay. About a bird design and a flower design. And then when we look actually at 14, when we talk about all that text, it also mentions if we look at 16, and it says that we're talking about these things in standard text form or in a stylized form, which again suggests trade dress. Now, the appellants council mentioned today that there was no reference to trade dress in the complaint. And that is incorrect, of course, because in the prayer, it specifically says among the things it's trying to enjoin is advertising of the products and infringement of their trade dress in the advertisement. So it's no secret that trade dress, for example, was a part of this case, at least inferentially. Wasn't there something somewhere about straps and certain things making them identifiable? I can't find it now, but I remember reading that somewhere there was some specifics as to what it is about the products themselves that would make them identifiable. Well, there's something in 26, and there's something in 88, I believe, as well. Yes. Which, if I remember correctly, also talked about that's an allegation a lot about the design, garment-specific quality design. I see. There's allegations about that in there as well. All right, so factually, what's your best case that there was an advertisement? It's not this label manipulation, is it? No, it's not just the... Well, what is it? Well, it's the repeated allegations here that they say that... Of what? Not just the word advertising, of what? Of what? Of the products. What are you saying? The product itself is advertising? No. All right, then what are you saying? I'm saying, for example, the complaint alleges, for example, at paragraph 52, they're saying that the injury occurred because the infringing intellectual property was used in an advertisement. It doesn't say anywhere about any specific advertisement, and we don't need to say, and there's no requirement that there be an allegation of specific advertising, just like in a personal injury case that alleges bodily injury. It doesn't have to say there was a tibia fracture or a fractured skull. It says repeatedly here that there was advertising, one, that there was advertising, and two, specifically, as required... All right, so that's in the complaint. So at the summary judgment stage, what evidence did you reduce of advertisements? That is the evidence, and that's all the evidence I need to establish a duty to defend, because all we're talking about is a potential, and, in fact, for great lengths to... So you're saying your case for that an advertisement was involved within the definition of the policy is established by the allegations in the complaint. Yes, Your Honor. Is that your case? Yes. Not your complaint, but the underlying complaint. Correct. That the underlying complaint... Right. That the underlying complaint... Not a complaint. Right. The underlying complaint provided to Great Lakes in September of 2014. That triggered enough information to provide potential for infringement of trade dress in an advertisement and infringement of slogan in an advertisement, both of those. Right? We have a lot of... We have all those... We have all that intellectual property listed in paragraph 14. That includes, for example, statements or words like life in progress and not so basic, which is very much like the case that we cite in our papers, the Hudson v. Colony Insurance case. There, again, there was a pleading that didn't include any cause of action for infringement of slogan, but what the merchant was selling there was counterfeit jerseys that said steel curtain across the back. Again, no claim of trade dress, but because that kind of text was potentially a slogan and because it was on those jerseys, that was enough for there to be a potential for trade dress infringement and there wasn't a question about advertising in that case. But we have a very similar situation here. We have garments that are alleged to have various marks on them, including marks that are potentially slogans. Life in progress, not so basic, just being among examples that are listed in paragraph 14. Those garments are alleged to have been shown in advertising. It said, we advertising using the garments. And then, again, in paragraph 52, for example, an express, at 52 of the underlying complaint, an express allegation that the damage occurred in the advertising. That is, the advertising caused the damage, not just that there was a display. In fact, Judge Snyder was very careful in her opinion, saying that her opinion was not just about display, but about a much broader perspective or potential breadth of advertising. Now, and then I think the discovery, well, first, so we have a situation where there's enough information in September of 2014 provided to the insurance company, right? And then we have a client or the underlying lawyer kept trying, kept trying, because he had a client that had bought a general liability policy that included advertising and personal injury coverage. He pushed it, and they kept denying. In fact, they ended up suing him. But so then in the course of that case, there's also discovery, right? And that discovery just really, it does confirm that the claims that are being made potentially fall within the scope of coverage. Because, again, we're in the duty to defend the world and not the duty to indemnify the world. So all we need here is that potential. And that potential is also established not only for trade dress, but it's also established for disparagement, right? Which is a third offense that we believe triggers the obligation to defend. We have the duty, the offense of trade dress in an advertisement, slogan in an advertisement, both of those require an advertisement. Then we have disparagement. Disparagement doesn't have any advertisement application to it or requirement to it. It's just if there is a potential for that obligation to have existed, that is for that liability to be possible in the underlying case, that created another third basis for there to have been a duty to defend. Council mentions the exclusion. The exclusion has no effect here. The policy in its ensuring promise says we provide coverage for advertising and personal injury. Advertising and personal injury is defined to mean, for example, infringement of slogan or trade dress in an advertisement. And then the exclusion just carefully says, yeah, we want to exclude other things like, you know, trademark. I mean, like trademark and patent. But there's no change. The rules haven't changed at all. One thing. Sure. I presume that on the duty to indemnify issue, we would be having exactly the same discussion. No. That wouldn't be correct, because that is going to be limited by, at that time, I'll have an obligation to prove what parts of the settlement actually fall within one of these categories. There's a settlement. But the questions as to what the policy means are the same questions. What the policy means. I understand. I don't think there's going to be a question about what the policy means at that point. The question will be. Well, you were just standing here and telling us that the exclusions don't really matter and so on and so on. Right. Because there's not going to be a question. I'm not going to come here and say that there's something in the underlying settlement that is covered that doesn't fall within those confines of the policy. I'm going to have to prove at that point that it falls within one of those. Not that it could have or possibly. It's quite a different burden. And honestly, I think if. But the interpretation of the contract of the policy is the same. The interpretation would be the same, although I don't think it's an issue about that, Go ahead. You're close to done. There's a great deal of time spent in the briefs arguing that the policyholder is speculating about claims. And this isn't a case of speculation. And in those cases that talk about speculation with the foundation and Hurley and Gunderson, if you look at those cases, those cases talk about situations where somebody is trying to assert that there's a different kind of injury that is a subject of the action. Here it's not a different kind of injury. This case was always about intellectual property. It always mentioned trade dress. So it's not a case like Gunderson or Hurley, for example, where there was a trespass and then the court said there was no coverage of trespass. And on appeal they try to say, well, it could have been property damage. So we look at a lot of those cases, Hurley, Gunderson, Ultra, those cases that have been cited. Those are different kind of issues. So this whole argument that's been raised about this being speculation, it doesn't apply here because it's the same kind of damage. So we ask, of course, that the judgment be affirmed. And the time is up. Thank you very much. And thank you for your time. I would, before you stand up, I would, I think we should have briefing or we all think we should have briefing on the Rule 54B question. If we were to give you two weeks to do that, would that be sufficient? Would you like in a letter brief form or? Probably a 10-page brief or something. We'll write an order. We'll send out an order, but I just want to know if there's any problem with approximately 14 days. If possible, I'm a little unclear. Are you asking us to provide briefing as to whether the 54B order was correct? Yes. I mean, that's ultimately a jurisdictional question or something like it, yes. All right. Okay. Go ahead with your argument. We'll write an order, but I just wanted to check the timing with you. Go ahead. Because it would be better if we don't start getting motions to continue. All right. And it's better if we do it sooner rather than later so we can still remember the case. We're coming up against the holidays. I would prefer if we could get the briefing in in early January if that would be. . . All right. Maybe we'll make it right after the holidays. I'm sorry? We'll think about doing it right after the holidays. Right. Okay. Thank you, Your Honor. Go ahead. The essential thing that everyone seems to be ignoring here is that there's a specific definition of advertisement in the policy. I think Judge Tashima was getting at that. It's a notice that is broadcast or published to the general public or specific market segments. But is that odd? I mean, is that an unusual definition of advertising, such that when somebody says advertising it isn't what you think they mean? That's what I would think they mean. Well, I don't think. . . I mean, is it some kind of specialized lingo or something? No. Well, I think it's getting out of the realm of the cases which talk about what's commonly understood as advertising. Yes. Isn't that commonly understood as advertisement? Well, I think a notice that is broadcast or published to the general public definitely is, Your Honor. Right. Exactly. So, therefore, when you say advertising in a complaint, that's what you mean, unless there's some reason to think otherwise. Well, no, because it says it's an advertisement. Okay? It's an advertisement. There has to be something. There's nothing. There's no catalog. There's no flyer. There is absolutely nothing here that's been alleged. Counsel has even. . . So, but the problem is that it's not the insured that's alleging it, right? It's some other party that's made this complaint. And so what's the insured supposed to do? All right? So let's say they make a motion saying the complaint isn't pledged specifically enough and the judge in the underlying case rejects it. Now what's the insured supposed to do? Well, he'd say, Well, let's send some discovery. They did that. They sent discovery. They said, Do you really mean. . . When you said advertising here, do you really mean advertising? And the answer was yes. What more do they need to do? I think what they need to do is to establish that there was something. There's something beyond saying, Yes, there was. . . We're alleging trade dress infringement. I think they have to show something. The problem is that a defendant in a lawsuit, they're basically forced with whatever has been kind of foist upon them by the other party in the lawsuit. How are they supposed to prove beyond a shadow of a doubt what the other side's alleging? I understand what you're saying, Your Honor. The reason why it's important here is because we have an insurance policy which excludes coverage for trademark infringement and trade dress infringement, for that matter. Unless it's in an advertisement. Unless trade dress infringement. Fair enough. And here you have a complaint for trademark infringement. Except as several people have said, including I think a couple of my colleagues, the complaint a number of times uses the words advertising and advertisement. Makes that allegation that we were injured by their advertising or their advertisement. Now, why is that not sufficient in terms of the initial duty to defend a claim? Because it is. . . Which is supposed to be decided on the basis of the complaint anyway. Because in this particular case, you have such a limited amount of coverage here. It's very specific. And to fall within the category. . . And one of the specific items covered is advertisement. Well, an advertisement, which is a notice that is broadcast or published. . . Right. We don't have a notice. . . So I ask you, I think it was maybe Judge Berzon's question. I think it was. But when the complaint says, you know, we were injured by their advertising, doesn't advertising refer to their making an advertisement? Isn't that the normal, natural meaning of the word? And advertisement means, you know, could mean what's defined in the policy. I understand what you're saying, Your Honor. But the word, the use of simply of the word advertisement, and then following it up with an interrogatory which, first of all, is objected to for being vague as to the term, what that means, is insufficient to establish that we have a notice. Well, we're not talking about indemnification. We're talking about a duty to defend. I understand that. I think even for that, you have to have some type of widespread dissemination to the general public. I know that, but why isn't that implied? Why isn't that implied by the term advertising? Because we have. . . Because we're talking about labels, obfuscation of labels. No, we're not talking. . . Not exclusively about labels. Not exclusively. Your time is up, and thank you very much, both of you. Thank you, Your Honor. And I think you'll be hearing from us shortly. Good. Thank you very much. Are we taking a recess now? We're going to take a 10-minute recess. Thank you.
judges: Tashima, Berzon, Kennelly